```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
US ENGINE PRODUCTION, INC. d/b/a
INTERNATIONAL DIESEL, LTD.,

                      Plaintiff,         MEMORANDUM & ORDER
                                         12-CV-4471(JS)(GRB)
           -against-

ISO GROUP, INC. and BCDS, INC.,

                      Defendants.
----------------------------------------X
```

**FILED**
**CLERK**
8/20/2013 4:07 pm
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

APPEARANCES
For Plaintiff:      John T. Lillis, Jr., Esq.
                    Kennedy, Lillis, Schmidt & English
                    75 Maiden Lane, Suite 402
                    New York, NY 10038

For Defendants:
ISO Group           Justin T. Marshall, Esq.
                    Richard E. Mitchell, Esq.
                    GrayRobinson, P.A.
                    301 East Pine Street, Suite 1400
                    Orlando, FL 32801

BCDS                Dennis M. Rothman, Esq.
                    Lester, Schwab, Katz & Dwyer
                    120 Broadway
                    New York, NY 10271

SEYBERT, District Judge:

        Currently pending before the Court are Defendant ISO Group, Inc.'s ("ISO") motion to change venue or to dismiss and Defendant BCDS, Inc.'s ("BCDS," and together with ISO, "Defendants") motion to change venue or to dismiss. For the following reasons, Defendants' motions are DENIED.

## BACKGROUND[1]

Plaintiff US Engine Production, Inc. d/b/a International Diesel, Ltd. ("Plaintiff" or "USEP") commenced this action against Defendants on September 7, 2012 asserting claims against both Defendants for breach of contract, replevin, conversion, unjust enrichment, interference with Plaintiff's business relationships, interference with Plaintiff's economic advantages, and for punitive damages.

Plaintiff is a New York corporation with an office and manufacturing facility in Ronkonkoma, New York that has researched, designed, developed, and manufactured a multi-part package of upgrades for High-Mobility Multi-Purpose Wheeled Vehicles ("HMMWVs"). (Compl. ¶¶ 1, 3.) Plaintiff initially called its HMMWV upgrade package the "Cobra Extreme Performance Repower and Upgrade Package." (Compl. ¶ 20.) This package "included modifications and enhancements of the vehicle's engine, transmission, cooling system, gear-shifting system, suspension system and protective armor." (Compl. ¶ 20.) Plaintiff designed, engineered, fabricated, assembled, and installed all of the component parts of the upgrade package, with a couple of exceptions where components parts were

---

[1] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of addressing Defendants' motions to dismiss.

manufactured by third parties under an exclusive licensing agreement with Plaintiff. (Compl. ¶ 21.)

ISO is a Delaware corporation with an office and place of business in Melbourne, Florida which markets, sells, and distributes components and parts for military hardware, equipment, and vehicles. (Compl. ¶¶ 5-6.) BCDS is a Virginia corporation with an office and place of business in Roanoke, Virginia which provides specialized tactical driver training. (Compl. ¶¶ 7-8.)

In 2010, ISO approached Plaintiff to discuss the possibility of a manufacturer-distributor relationship. (Compl. ¶¶ 1, 23.) ISO travelled to Plaintiff's offices in Ronkonkoma "numerous times" to discuss this potential relationship. (Compl. ¶ 24.) According to Plaintiff, "ISO agreed to advertise, market, display, and distribute USEP's HMMWV Upgrade Package on the global market for the purpose of establishing market share and achieving volume sales for USEP's benefit." (Compl. ¶ 28.)

"To ensure confidentiality" between Plaintiff and ISO, they entered into an initial Non-Disclosure Agreement (the "ISO-USEP NDA") on December 6, 2010. (Compl. ¶ 30 & Ex. 1.) On December 14, 2010, ISO provided Plaintiff with a Memorandum of Understanding ("ISO-USEP MOU") to document the parties' intentions. (Compl. ¶ 31 & Ex. 2.) Plaintiff and ISO disagreed

3

on certain specifics, though, and therefore did not execute the ISO-USEP MOU. (Compl. ¶¶ 32-33.)

Rather, Plaintiff alleges that on February 17, 2011, it and ISO entered into a "Non-Circumvention, Non-Disclosure and Confidential Private Working Agreement" ("NCNDCA"). (Compl. ¶¶ 1, 33 & Ex. 3.) Pursuant to the NCNDCA, Plaintiff disclosed to ISO proprietary and confidential information. (Compl. ¶ 1.) Such information included a prototype of its HMMWV upgrade components, Plaintiff's business contacts, and a list of existing and targeted customers. (Compl. ¶¶ 1, 37-39.) After some discussions with ISO, Plaintiff then agreed to change the name of the upgrade package to the "EMV Transformer" package. (Compl. ¶ 41.)

Thereafter, ISO pursued particular sales opportunities, including a trade show in Las Vegas in January 2012. (Compl. ¶¶ 42-44.) Although ISO had received some commitments, no orders were placed with Plaintiff through ISO. (Compl. ¶ 47.) In fact, instead of facilitating sales, "ISO instead co-opted the business contacts USEP provided ISO for entrée to certain customers and markets in a manner that usurped USEP's future access to those contacts, customers, and markets." (Compl. ¶ 48.) For example, ISO has and continues to solicit Plaintiff's customers. (Compl. ¶ 62.) ISO has also sourced from Plaintiff's competitors similar upgrade components "using

4

in its efforts confidential and proprietary information USEP provided ISO." (Compl. ¶ 64.) In addition, ISO began advertising and marketing Plaintiff's HMMWV upgrade package as its own. (Compl. ¶¶ 49-53.)

In the meantime, BCDS was one of the contacts Plaintiff provided to ISO. (Compl. ¶ 2.) In January 2011, Plaintiff, ISO, and BCDS entered into a Memorandum of Understanding (the "USEP-ISO-BCDS MOU") regarding confidential information shared between the three parties. (Compl. ¶¶ 2, 69 & Ex. 4.) At the same time, the parties circulated, but did not execute, a Non-Disclosure Agreement (the "USEP-ISO-BCDS NDA"). (Compl. ¶ 70 & Ex. 5.)

Under those agreements, the parties agreed to keep all information exchanged between them confidential, and accordingly Plaintiff provided BCDS with proprietary and confidential information regarding its HMMWV upgrade packages and its business contacts. (Compl. ¶¶ 2, 73, 76.) As part of this arrangement, BCDS knew of Plaintiff's relationship with Lord Corporation, from which Plaintiff had an exclusive license for Plaintiff's upgrade package suspension system. (Compl. ¶ 77.) In April 2012, BCDS President William Leaman traveled to Lord Corporation and unsuccessfully attempted to procure its own license. (Compl. ¶ 78.)

"Additionally, rather than supporting any business opportunities for the benefit of USEP, BCDS began and continues to support and promote ISO's marketing, offering, and distribution of USEP's HMMWV upgrade components as if they were ISO's products, for the benefit of BCDS and ISO, without reference or benefit to USEP." (Compl. ¶ 83.) Furthermore, BCDS has revealed confidential and proprietary information and has attempted to find suppliers to produce the components of Plaintiff's upgrade package from Plaintiff's competitors. (Compl. ¶¶ 84-85.)

## DISCUSSION

Both Defendants now move to have this action transferred to the Middle District of Florida or, in the alternative, to dismiss Plaintiff's Complaint. The Court will first address Defendants' arguments regarding change of venue, followed by a discussion of their motions for dismissal. Before the Court turns to the specific arguments, however, the Court will engage in a choice-of-law analysis. The parties dispute whether New York or Florida law applies to Plaintiff's claims, and because the applicability of one state's laws over the other has ramifications for both the change of venue and motion to dismiss analyses, an initial discussion in this regard is appropriate.

I.  Choice of Law

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941); Bigio v. Coca-Cola Co., 675 F.3d 163, 169 (2d Cir. 2012). "Under New York choice-of-law rules, '[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" Licci v. Lebanese Canadian Bank, SAL, 672 F.3d 155, 157 (2d Cir. 2012) (alteration in original) (quoting Wall v. CSX Transp., Inc., 471 F.3d 410, 415 (2d Cir. 2006)).

Here, though Defendants insist that a choice-of-law analysis is appropriate and that Florida law applies to the underlying claims, they poorly define the extent to which there is any potential conflict between Florida and New York law. (See Pl.'s Opp. Br., Docket Entry 19, at 12 (noting that Defendants' opening briefs did not identify any conflict); ISO Reply Br., Docket Entry 23, at 5 (identifying a conflict between New York and Florida law regarding the "economic loss rule" and relying upon a New York case that has been reversed).) In any event, courts to address claims similar to those Plaintiff has raised have found that New York and Florida law may conflict. See Meszaros v. Klick, No. 09-CV-0765, 2011 WL 5238488, at *6

(W.D.N.Y. Oct. 29, 2011) ("[A]s to Plaintiffs' unjust enrichment claim, Defendants argue that whereas in New York a plaintiff could assert both a breach of contract claim and an unjust enrichment claim concurrently, this would not be possible under Florida law."); Keefus Ltd. P'ship v. Fromkin Energy, LLC, No. 06-CV-0987, 2007 WL 2454217, at *3 (N.D.N.Y. Aug. 23, 2007) (noting a conflict between how Florida law and New York law interpret conversion claims).

In New York, there are different choice-of-law analyses depending upon whether the claims sound in tort or contract. See Keefus, 2007 WL 2454217, at *3. Thus, with respect to Plaintiff's contract claims, New York courts use a "center of gravity" or "grouping of contacts" choice of law analysis. See AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., 726 F. Supp. 2d 307, 317 (S.D.N.Y. 2010). "Courts should consider a variety of factors in this analysis, including the place of contracting, place of negotiation and performance, the location of the subject matter and the domicile or place of business of the contracting parties." Id.

Defendants argue that Florida law should apply to Plaintiff's contract claims because

> [i]f the proposed NCNDCA agreement had become a valid and binding contract as USEP contends, then: i) ISO would have sent orders to USEP from ISO's facility in Florida; ii) USEP would have shipped its

> component parts to ISO's facility in Florida; iii) ISO would have combined USEP's components with all other components at ISO's Florida facility; iv) ISO would have shipped the entire packages to customers from ISO's facility in Florida under ISO's export licenses; and v) ISO's purchase payments to USEP would originate from ISO's facility in Florida.

(ISO Br. to Change Venue or Dismiss, Docket Entry 14, at 15-16.) ISO also maintains that, if there was a valid contract between Plaintiff and ISO, Plaintiff breached the contract first by obtaining an exclusive distributorship agreement with Omega Centauri Corporation ("Omega"). (ISO Br. to Change Venue or Dismiss at 7, 15.) Omega is a corporation that is also based in Melbourne, Florida and is one of ISO's direct competitors. (ISO Br. to Change Venue or Dismiss at 7, 15.) Accordingly, for this reason as well, Defendants believe that a choice-of-law analysis favors Florida. The Court disagrees.

Here, there are two sets of contracts in dispute, Plaintiff's contractual arrangements with ISO, and Plaintiff's contractual arrangements with BCDS. The parties, however, focus on Plaintiff's contractual arrangements with ISO, with little discussion regarding Plaintiff's arrangements with BCDS. Moreover, the parties seem to have a fundamental disagreement as to the particular business relationship that they were exploring. According to Plaintiff, ISO approached Plaintiff to propose that it market and sell Plaintiff's HMMWV upgrade

9

package. (Compl. ¶ 23.) According to Defendants, Plaintiff was to be a supplier to ISO for ISO's own EMV Transformer Package. (ISO Br. to Change Venue or Dismiss at 4; Leaman Decl., Docket Entry 17-1, ¶ 9.)

In any event, there does not appear to be any dispute that the contracts were drafted in New York and last signed in New York. (See ISO Reply Br. at 1; see generally BCDS Reply Br., Docket Entry 24.) These facts are significant in and of themselves. See Locator of Missing Heirs, Inc. v. Kmart Corp., 33 F. Supp. 2d 229, 232 (W.D.N.Y. 1999) (finding that New York law applied in part because contract was drafted in New York and last signed in New York). Moreover, Defendants also agree that they travelled to Plaintiff's offices in New York on several occasions, apparently to discuss their potential business relationships and presumably to negotiate any potential contractual arrangements. (ISO Br. to Change Venue or Dismiss at 5 ("During the course of vetting a possible contractual business relationship with USEP in relation to ISO's EMV Transformer Package, ISO's executives traveled to USEP's facilities located in Ronkonkoma, New York on six (6) occasions from 2011 to 2012."); Leaman Decl. ¶¶ 7-8 (discussing visits from BCDS President to Plaintiff's offices).) Again, this weighs in favor of applying New York law. See AllGood Entm't, Inc., 726 F. Supp. 2d at 317 (finding that choice of law

analysis favored Tennessee in part because the plaintiffs alleged that the contract negotiations and formation of the agreements at issue occurred in Tennessee, even though the contract was signed and notarized elsewhere).

In addition, even considering the parties' disagreement as to the exact contractual arrangements contemplated, the subject matter of the contracts were either Plaintiff's component parts or full upgrade package and its confidential and proprietary information, all of which are in New York. See Ackerley Media Grp., Inc. v. Sharp Elecs. Corp., 170 F. Supp. 2d 445, 451 (S.D.N.Y. 2001) (finding that Washington law applied where subject matter of contract was in Washington).

After balancing these considerations and Defendants' arguments, the Court finds that New York law applies to Plaintiff's contract claims.

With respect to Plaintiff's non-contract claims, New York courts apply an "interest analysis" to determine choice-of-law issues. See AllGood Entm't, Inc., 726 F. Supp. 2d at 315. This analysis differs depending on whether the law at issue is loss-allocating or conduct-regulating. See id. Where, as here, Plaintiff's claims are generally conduct-regulating, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in

11

regulating behavior within its borders." Id. (noting that tortious interference with contract is a conduct-regulating rule); see Keefus, 2007 WL 2454217, at *4 (tortious interference and conversion are conduct-regulating). "These include the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile, residence, nationality, place of incorporation and place of business of the parties, and the place where the relationship, if any, between the parties is centered." AllGood Entm't, Inc., 726 F. Supp. 2d at 315.

Here, while there is no definitive locus, on balance the Court agrees with Plaintiff that New York law should apply. The injury occurred in New York, which is significant even though the conduct causing the injury presumably occurred in Florida, where ISO is located, and potentially in Virginia, where BCDS is located. See Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortg. Corp., 265 F. Supp. 2d 366, 378 (S.D.N.Y. 2003) ("The place of the tort is usually the place where the alleged injury is inflicted, rather than where the actions causing the injury originated."). Moreover, the contractual relationships, to the extent that there were any, center around New York. See AllGood Entm't, Inc., 726 F. Supp. 2d at 316 ("[T]he only thing we know for certain about the alleged contract is that the parties asserting a breach are based in New

Jersey and would have ultimately received the benefit of its bargain in that state.").

Thus, the Court finds that New York law applies to Plaintiff's contract and tort claims. With this in mind, the Court turns to Defendants' arguments regarding change of venue and dismissal.

II. Change of Venue

The Court will first outline the general considerations on a motion to change venue before turning to the specific factors and analysis.

A. Legal Standard

District courts may transfer a civil matter "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining whether to grant a motion to transfer venue, courts must engage in a two-part inquiry: "(1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003) (quoting Schertenleib v. Traum, 589 F.2d 1156, 1161 (2d Cir. 1978)).

Courts have broad discretion in deciding whether a transfer is warranted, and they consider factors that include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006) (alteration in original) (internal quotation marks and citation omitted). As Defendants correctly note, additional factors include the Court's familiarity with the governing law and judicial economy. (ISO Br. to Change Venue or Dismiss at 11 (citing cases).)

The party requesting transfer carries the "burden of making out a strong case for transfer," N.Y. Marine & Gen., Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks and citation omitted), and the plaintiff's choice of forum "should not be disturbed unless the balance of factors tips decidedly in favor of a transfer," Wildwood Imps. v. M/V Zim Shanghai, No. 04-CV-5538, 2005 WL 425490, at *3 (S.D.N.Y. Feb. 20, 2005) (citation omitted).

Here, even assuming that this action may have been brought in the Middle District of Florida, the Court finds that venue should not be transferred based upon the aforementioned factors.

14

B. Convenience of the Parties

ISO argues that, because Plaintiff has an exclusive distributorship agreement with Omega, based in Melbourne, Florida, that it would not be inconvenient for Plaintiff to travel to Florida. (ISO Br. to Change Venue or Dismiss at 13.) However, Defendants have admittedly travelled to New York on several occasions as well, showing that it is not particularly inconvenient for them to travel here either.

"[A] transfer of venue should not merely shift the burden of inconvenience from one party to another." Neil Bros. Ltd. v. World Wide Lines, Inc., 425 F. Supp. 2d 325, 328 (E.D.N.Y. 2006). "No matter where this action is to be heard, should it proceed to trial, either the plaintiff or the defendant will be inconvenienced by having to travel a substantial distance." Designs by Glory, Ltd. v. Manhattan Creative Jewelers, Inc., 657 F. Supp. 1257, 1259 (S.D.N.Y. 1987). Therefore, the Court finds that the convenience of the parties is a neutral factor in this case.

C. Convenience and Attendance of the Witnesses

Defendants provide lists of potential witnesses, including individuals from Omega, whom they say can be expected to testify. (See ISO Br. to Change Venue or Dismiss at 9-10; Lowdermilk Aff., Docket Entry 14-1, ¶ 21; Leaman Decl. ¶ 13.)

15

Some of these witnesses are located in Melbourne, Florida, while others are located in various other states and countries.

When making a motion to transfer venue on the ground that witnesses will be inconvenienced, Defendants must state generally what their testimony will cover. Falconwood Fin. Corp. v. Griffin, 838 F. Supp. 836, 840-41 (S.D.N.Y. 1993). Here, ISO includes several witnesses from Omega. (See ISO Br. to Change Venue or Dismiss at 10.) While the relevance of Plaintiff's agreement with Omega is unclear at this stage in the litigation, the Court agrees with Plaintiff that ISO's inclusion of some of the witnesses from Omega is overbroad. Specifically, to the extent that witnesses from Omega would be relevant, it would be in the context of Plaintiff's exclusive distributorship agreement with Omega. ISO fails to explain why witnesses who have knowledge of Omega's operations and international distributorship arrangements generally would be relevant.

Moreover, several of the other witnesses that Defendants themselves identify are neither within 100 miles of Melbourne, Florida nor of Ronkonoma, New York.

Accordingly, the Court finds that, although the convenience of witnesses is a significant factor, it weighs only slightly in favor of transfer.

D. Location of Relevant Documents and Relative Ease of Access to Proof

ISO also argues that the "majority of relevant documents" are located in Florida. (ISO Br. to Change Venue or Dismiss at 14.) However, as ISO also apparently concedes, "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007). Ultimately then, this factor is neutral, or if anything, weighs only slightly in favor of transfer.

E. Locus of Operative Facts and Familiarity with Governing Law

As the Court has already discussed in the choice-of-law analysis, New York law applies and, contrary to Defendants' assertions, the locus of operative events is not necessarily Florida just because any alleged misconduct on ISO's part occurred in Florida. Accordingly, the Court finds that this factor weighs against transfer.

F. The Relative Means of the Parties

ISO concedes, and the Court agrees, that the relative means of the parties is a neutral factor here.

G. Plaintiff's Choice of Forum

Defendants assert that Plaintiff's choice of forum should be given little weight because there is little or no

connection between New York and the locus of operative facts and because the other factors weigh heavily in favor of transfer. (ISO Br. to Change Venue or Dismiss at 18.) However, as outlined above, the Court disagrees that there is little connection to New York or that the factors weigh heavily in favor of transfer. Furthermore, the "plaintiff's choice of forum is entitled to considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant." Orb Factory, Ltd. v. Design Sci. Toys, Ltd., 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998). This is particularly so where, as here, Plaintiff is a resident of the forum district. See Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Accordingly, the Court finds that this factor weighs against transfer.

In sum, Defendants have not adequately shown that a change of venue is appropriate here, and their motions to change venue are therefore DENIED.

III. Motions to Dismiss

Finally, both Defendants move, in the alternative, to dismiss Plaintiff's Complaint. Preliminarily, the Court notes, and rejects, ISO's assertion that the Complaint is an inappropriate "shotgun" pleading that fails to satisfy the requirements of Federal Rule of Civil Procedure 8. (See ISO's Br. to Change Venue or Dismiss at 19-20.) While it is true that

18

Rule 8 requires a "short and plain" statement, there is nothing necessarily inappropriate or confusing about Plaintiff's Complaint or its incorporation of prior paragraphs in setting forth its causes of action. See Iconix Brand Grp., Inc. v. Bongo Apparel, Inc., No. 06-CV-8195, 2008 WL 2695090, at *3 (S.D.N.Y. July 8, 2008) ("[I]t must be noted that the incorporation of preceding paragraphs into subsequent causes of action is a standard practice . . . ."); ReSource N.E. of Long Island, Inc. v. Town of Babylon, 80 F. Supp. 2d 52, 57 (E.D.N.Y. 2000) (after initially dismissing the original ninety-seven page, 442-paragraph complaint, the court found that the amended complaint of forty-nine pages and 215 paragraphs was not "so opaque as to defy understanding or prevent the Defendants from answering"). Accordingly, Defendants' motion to dismiss the Complaint on this ground is DENIED.

The Court thus turns to Defendants' additional arguments in support of their motions to dismiss the Complaint. In doing so, however, the Court notes that ISO's motion to dismiss discusses the viability of Plaintiff's claims under Florida law only. (ISO Br. to Change Venue or Dismiss at 19-26.) BCDS's moving papers then incorporates by reference ISO's brief. (Leaman Decl. ¶ 2.) Although BCDS's reply brief then addresses the possible application of New York law, a party cannot raise arguments for the first time in a reply brief. See

Fairfield Fin. Mort. Grp., Inc. v. Luca, 584 F. Supp. 2d 479, 485 n. 2 (E.D.N.Y. 2008) (declining to address defendants' arguments raised for the first time in the reply papers); Vilkhu v. City of N.Y., No. 06-CV-2095, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008) ("Because defendants have raised this argument for the first time in their reply papers, I decline to consider it on this motion.").

Accordingly, Defendants' motion to dismiss is DENIED with leave to renew.

## CONCLUSION

For the foregoing reasons, Defendants' motions to change venue are DENIED and their motions to dismiss are DENIED with leave to renew. If Defendants wish to renew their motions to dismiss, they must file such motions within thirty (30) days of the date of this Memorandum and Order.

In so holding, however, the Court disagrees with Plaintiff's contention that ISO's motion was "frivolous" and accordingly declines any request on Plaintiff's part to award it costs and expenses in defending against either of the Defendants' motions.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:   August 20, 2013
         Central Islip, NY